[No. 567.  August 24, 1895.]

# OAK GROVE AND SIERRA VERDE CATTLE COMPANY, PLAINTIFF IN ERROR, v. E. L. FOSTER, RECEIVER OF FIRST NATIONAL BANK, OF DEMING, DEFENDANT IN ERROR.

PROMISSORY NOTE OF CORPORATION, EXECUTED BY TREASURER—ASSUMPSIT—PLEA—DENIAL OF EXECUTION OR AUTHORITY TO EXECUTE—VERIFICATION.—In a suit against a corporation in assumpsit on a promissory note, purporting on its face to be the obligation of the company executed by its treasurer, where the defendant pleaded it had neither executed the note nor authorized any one to execute it in its behalf, which was verified by the affidavit of its president, such plea so verified constituted a denial under oath contemplated by section 1922, Compiled Laws, enabling either party to a suit to take as admitted by the other party the genuineness and due execution of any written instrument referred to in a pleading, where such instrument or copy thereof is attached to or incorporated in such pleading, unless in another pleading or writing, filed in the case, the opposite party denies the same under oath; and it was error to strike out such plea on the ground that it was applicable only to instruments under seal.  In Luna v. Mohr, 3 N. M. (Gil.) 63, this court held that such plea was applicable only to such instruments.  But there is no reference in that opinion to section 1922 supra, and it does not appear whether said section, enacted in 1882, was in force at the time of the filing of the plea of non est factum in that case.

ID.—CORPORATION, AUTHORITY OF TREASURER TO EXECUTE NEGOTIABLE PAPER IN NAME OF.—The treasurer of a corporation is not such an officer as is vested with an implied power to execute negotiable paper in its name.  Daniel, Neg. Inst., sec. 394.

ID.—EVIDENCE, ADMISSIBILITY OF.—In such action, where it appeared that the treasurer of the defendant company had no authority to execute or discount paper, evidence that that was his first attempted exercise of authority to execute and discount its note was admissible, and should have been permitted to go to the jury.

ID.—BONA FIDE HOLDER.—Where, in such action, it appeared that the note sued on was executed without authority by the treasurer of the defendant company, who was also the president of the plaintiff bank, in consideration of the transfer to his personal account of an acceptance of a third party, given as collateral security for a loan, and that the said president, assuming to act for the discount committee of the bank, discounted said note and credited it on the acceptance,—the bank was not a holder for value without notice.

ERROR, from a judgment in favor of plaintiff, to the Third Judicial District Court, Grant county. Judgment reversed.

The facts are stated in the opinion of the court.

T. F. CONWAY, A. A. JONES, and FRANK SPRINGER for plaintiff in error.

The court erred in striking out the second plea, denying execution of the note sued on. Sec. 1922, Compiled Laws, N. M. 1884.

Any defense which at common law would be available under the general issue, and which does not involve the authenticity of the signature, was available to the defendant in this case. Snyder v. Van Doren, 46 Wis. 602; Neilson v. Schuckman, 53 Id. 638; Ames v. Quinby, 106 U. S. 342; Luna v. Mohr, 3 N. M. (Gil.) 63.

The note on its face purported to be executed by an agent, and it is elementary that "if the instrument was executed by an agent, his authority must be proved, together with his handwriting." 2 Greenlf. Ev., sec. 158.

Such an agency can not be established by the declarations of the agent. Marvin v. Wilber, 52 N. Y. 270; Peoples Bank v. Church, 109 N. Y. 511.

Consideration means not only benefit to the promisor, but also loss or disadvantage to the promisee; but the latter must accrue at the request or on the motion of the promisor. 1 Par. Con. 431.

When it appeared that the note was executed by Dane as the agent of both parties, and was given to lend the credit of the corporation without consideration the burden was on the plaintiff to show express authority for it. 1 Morawotz, Private Corporations, sec. 423. See, also, Bank v. Bank, 95 U. S. 559; Bank

v. Waterworks Co., 9 N. Y. 859; Craft v. S. B. R. R. Co., 150 Mass. 207; Wahlig v. Standard Pump Mfg. Co., 9 N. Y. 739.

The fact that Dane represented both parties makes the note, under the proved facts, void. In matters of discretion an agent can not so act. Bish on Con., sec. 337.

And if he does or contracts in the name of his principal for his own interest, the principal is not bound. Claflin v. Bank, 25 N. Y. 293; People v. Overyssel, 11 Mich. 222; Mercantile Trust Co. v. Insurance Co., 8 Mo. App. 408; Wardell v. Union Pacific, 103 U. S. 651; Thomas v. Brownsville, 109 Ib. 522.

The giving of the note by Dane, even if he had authority to execute notes, was such a gross breach of trust, and so palpable a fraud upon the cattle company, that it created no liability. Robertson v. Chapman, 152 U. S. 673.

The bank is chargeable with absolute knowledge of the nature of the transaction. It was known to the cashier, and it was done by the president, who had active management of its business, and had charge of discounting paper. Atlantic Mills v. Indian Mills, 147 Mass. 268, 28 Am. and Eng. Corp. Cases, 555. See, also, Smith v. Los Angeles, etc., 78 Cal. 269; Chemical Nat. Bank v. Wagner, 42 Am. and Eng. Corp. Cases, 667; Wilson v. R. R. Co., 120 N. Y. 145, 32 Am. and Eng. Corp. Cases, 187; Claflin v. Farmers Bank, 25 N. Y. 293; Garrard v. Pittsburg R. R. Co., 29 Pa. St. 154; Chew v. Mining Co., 2 Fed. Rep. 5.

SUPPLEMENTAL BRIEF FOR PLAINTIFF IN ERROR.

The affidavit denying the execution of the note was a sufficient denial of the signature. Its langauge is not to be subjected to the same liberal construction as that of the declaration and pleas. Boone, Code Pl.,

sec. 34; McCormick v. Bay City, 23 Mich. 457; Anderson v. Walter, 34 Id. 113; Haight v. Arnold, 48 Id. 513. See, also, Ludlow v. Barry, 22 N. W. Rep. (Wis.) 140; Neilson v. Schuckman, 11 Id. 44.

Section 1914, Compiled Laws, mentions the denial of the signature, section 1915 the denial of the execution, and section 1922 mentions both the signature and execution, while the proviso of this section mentions the execution only, and the reasonable view is that the legislature used the words "signature" and "execution" as synonymous.

Even if Dane were treasurer, there is no proof that, under the by-laws, or by any resolution of the directors of the Oak Grove Company, he was given any authority to execute notes of the company; and he has no such implied authority as such. Page v. Falls River, etc., 31 Fed. Rep. 257; Morawetz Corp., sec. 251; Foster v. Ohio-Colorado Reduc. Co., 17 Fed. Rep. 130; People's Bank v. St. Anthony, 109 N. Y. 512.

Though a note may have the genuine signature of one having authority to sign it, if the obligation was issued to, or secured by, plaintiff without consideration, through fraud, breach of trust, misrepresentation, or mistake, they may be shown though no affidavit be filed. Neilson v. Schuckman, 53 Wis. 638, 11 N. W. Rep. 44; Towle v. Seaman, 42 N. W. Rep. 1117; Freeman v. Ellison, 37 Mich. 459; Spicer v. Smith, 23 Id. 26; Ames v. Quinby, 106 U. S. 342.

The cashier of the bank testified to his knowledge of the infirmities of the $6,000 note, and his knowledge was the knowledge of the bank. Morawetz, Corp., secs. 253, 254; Loving v. Brodie, 134 Mass. 453; 3 Am. and Eng. Corp. Cases, 277; Merchants Bank v. State Bank, 10 Wall. 604; Branch Bank v. Steele, 10 Ala. 915.

The clause in the note stipulating for ten per cent attorneys' fees is in the nature of a penalty, and assumes and determines the amount of damages to be

sustained in advance of the breach. This is not allowed. Meyer v. Hart, 40 Mich. 517; Bullock v. Taylor, 39 Id. 137; Witherspoon v. Musselman, 14 Bush (Ky.), 214. See, also, Watts v. Camars, 115 U. S. 353; Bradstreet v. Baker, 14 R. I. 546; Schofield v. Tomkins, 95 Ill. 190.

H. B. FERGUSSON for defendant in error.

The power of the defendant company to make the note is beyond question. 1 Daniel, Neg. Inst., sec. 382, et seq.; Id., sec. 386.

The court properly held that the loss must fall upon the company, which made Dane its treasurer and representative, and thus empowered him to obtain the money from the bank upon its note. This principle extends not only to innocent holders of commercial paper, but to the original parties to the transaction. 1 Daniel, Neg. Inst., sec. 391.

The question of the proper verification of. a plea was directly passed upon by this court in Luna v. Mohr, 3 N. M. (Gil.) 63. The defendant says that its plea that it did not execute, etc., is in effect a denial of its signature, while this court in that case held.it to be a plea of non est factum, and, therefore, improper.

Section 1922, Compiled Laws, does not apply here. It merely prescribes a statutory rule by which any instrument in writing referred to in a pleading, and incorporated in, or attached to, the same, shall be regarded as proven, or duly executed, unless the genuineness or due execution of the same is denied under oath.

COLLIER, J.—This was an action in assumpsit by the defendant in error, as receiver of the First National Bank of Deming, against plaintiff in error, upon the following promissory note:

"$6,000.      DEMING, NEW MEXICO, Dec. 1, 1892.

"On March 1, after date, we jointly and severally promise to pay to the order of the First National Bank six thousand, no/100 dollars, at the First National Bank of Deming, with interest at the rate of one per cent per month from Jan. 1, 1892, until paid.   Value received.   And in event of a suit to force collection of this note, or any portion thereof, we further agree to pay the additional sum of ten per cent upon the amount found due, as attorney's fees in said suit.

"THE OAK GROVE AND SIERRA VERDE CATTLE CO.

"Per C. H. DANE, Treasurer.

"No. 1,598.   $6,000.   Due March 1, 1892."

The declaration claimed that amount, with interest and ten per cent as attorney's fees, and was made returnable to the November, 1893, term of said district court.   At this term defendant filed a plea "that the note upon which plaintiff's action is founded was not executed by it, the defendant, or by anyone authorized to bind it in the premises," and to this plea is an affidavit that "T. F. Conway, agent for said defendant in this behalf, makes oath that the above plea is true." At said term the record shows the following:   "Now, by order of the court, the defendant herein is granted leave to plead over in this cause.   And now the court overruled plaintiff's motion to strike out the pleas heretofore filed herein."   At the April, 1894, term of said court there was filed plea of general issue and special pleas, both concluding to the country.   The first special plea alleged that defendant "did not execute," and that it "did not authorize any person to execute, the said promissory note" for it or in its behalf.   To these pleas was annexed the affidavit of Henry W. Bishop, as president of defendant corporation, "that said defendant never authorized any person to execute said promissory note for it or in its behalf; that said defendant never ratified the execution of said promis-

sory note; and that I have read the foregoing pleas by the said defendant above pleaded, and know the contents thereof, and that the same is true in substance and in fact. So help me God." Issue was joined on these pleas as follows: "And the said plaintiff, to the pleas respectively of the said defendant company, whereof said defendant puts itself upon the country, doth the like." At a later day of the term two additional pleas were filed, both concluding with a verification, and neither sworn to. The first, in substance, alleged that the note was obtained by fraud and circumvention, in that C. H. Dane, being treasurer of defendant corporation, made and gave said note without consideration, and the bank, well knowing Dane had no authority to execute said note, accepted the same as the note of Dane, and not of defendant. The other additional plea alleged that Dane signed the note without authority, and delivered same to the bank without consideration, either to Dane or defendant, as to which the bank had notice, and such delivery was for the purpose of entering upon the books of the bank said note as a fictitious credit and asset of said bank. Plaintiff moved to strike out the second, third, and fourth pleas, because the second plea is applicable only to actions upon instruments under seal; because the matter in the third may be shown under plea of general issue; and the same as to the fourth, if they make any defense. The court below sustained the motion as to all three of said pleas, and the cause proceeded to trial, as may be inferred, though not definitely shown, upon the "sworn plea of the general issue," found on pages 10 to 11 of the record. Over the objection of the defendant that the note, "under the sworn plea of the general issue, can not be introduced except its execution be first proven," the court admitted the note in evidence, and it being admitted that plaintiff is receiver, etc., and the suit properly brought, plaintiff rested its

case. The defense introduced as a witness F. H. Siebold, who was cashier of the bank at the time that the note was given, who testified, in effect:     That the note came into the bank January 7, 1892. That at the time Dane was president and director of the bank. That he never saw the note made. That, on the books of the bank, bills receivable was charged with $6,000, and the number, 1,032, standing for acceptance of $20,000, given by Masterson on Huller, was credited with $10,500, being $6,000, amount of this note, and another item of $4,500. The acceptance was entered on the books October 5, 1891, and, being $10,000 over the limit that the bank (being capitalized for $100,000) could loan to any one individually, Dane had to reduce this overlimit paper because the bank examiner was expected along very soon. This $6,000 was given as part payment to reduce this overlimit paper. "Q. Was it credited on the $20,000 acceptance in any way? A. Yes, sir. On one account." This acceptance was drawn by Masterson, accepted by Huller, and used by Masterson as collateral security. Dane took the collateral security, put it in bills receivable on or about October 5, 1891, as his individual paper, and got from the bank the value of $20,000 for the acceptance. The following question and answer were asked and given: "Q. The $6,000 note, then, was used by Mr. Dane to reduce his personal liability on the $20,000 acceptance to the bank? A. Yes, sir." Plaintiff moved to strike out the testimony as to the fact of Dane using this money personally, which was sustained, and exception taken, but the testimony was allowed to stand "as to the consideration for the note" and "as to the proceeds of the note." It is difficult to gather from the testimony whether the witness meant to say the acceptance which was given as collateral security, which was reduced by the $6,000 note, or whether the indebtedness of Dane, which purported to be reduced by the acceptance, was so reduced;

but it is taken that the indebtedness was so reduced, as the collateral did not belong to the bank, and would not have been reduced if it had. These questions were asked: "Q. In the regular course of business in the Deming bank at the time you were cashier, who attended to the discounting paper? A. Mr. Dane. Q. That bank had a discount committee, didn't it? A. Yes, sir. Q. How many members? A. Three. Q. Directors? A. Three directors. Q. Under the by-laws of the bank, whose duty was it to pass on the discounted notes, loans, etc.? A. The discount committee. Q. Who actually acted? A. Mr. Dane. Q. Did you have anything to do with the discount of any notes? A. No, sir. Mr. Dane had an account with the bank as treasurer of defendant company, and checked against it from time to time. Q. Did Mr. Dane, as treasurer, execute or discount in your bank, the First National Bank of Deming, a note of the Oak Grove & Sierra Verde Cattle Company, previous to this?" This question being objected to as incompetent, immaterial, and irrelevant, objection was sustained, and exception noted. The witness stated that no consideration passed out of the bank for the note. Other testimony was offered by the defendant as to by-laws, but was ruled out, and the court instructed the jury to find a verdict for amount of note, interest, and attorney's fees. Motion for new trial being made and overruled, the case is here by writ of error.

The assignments of error which will be noticed in this opinion, are that the court below erred in striking out the second, third, and fourth pleas; in admitting in evidence the promissory note upon which the action was founded; in excluding legal and competent evidence; and in instructing the jury to find for the plaintiff.

In considering the question of striking out the pleas, we will take it that the first plea was regarded by

the court and counsel at the trial as not being in the case, and that of the four other pleas the three last were stricken out by the court, thus leaving what the counsel for the defendant in the court below, plaintiff in error here, denominated "sworn plea of the general issue." The question of striking out the third and fourth pleas is perhaps easily disposed of by saying that, as these pleas merely set up want of consideration, evidence as to that may be given under the general issue.

The second plea, which denies that the defendant either executed the note sued on or authorized any person to execute it in its behalf, and is verified by the affidavit of the president of the defendant company, was stricken out upon the ground that such a plea was only applicable to instruments under seal. This question requires a more extended consideration. The particular ground stated in the motion for striking out the second plea is that such plea is applicable only to actions upon instruments under seal; and this, we think, was so decided in Luna v. Mohr, 3 N. M. It can not be gathered from the opinion in that case whether section 1922, enacted in 1882, was in force at the time of the filing of the plea of non est factum, but there is not in the opinion any reference whatever to said section. Section 1922 enables either party, plaintiff or defendant, to take as admitted by the other party the genuineness and due execution of any written instrument referred to in a pleading, where it or a copy is incorporated in, or attached to, such pleading, unless in another pleading or writing filed in the cause the opposite party denies the same under oath. If, under the rules of evidence, "genuineness and due execution" would have to be proven as to the particular written instrument referred to and attached to the pleading, this necessity would be obviated by there not being a

PROMISSORY note of corporation, executed by treasurer: assumpsit: plea, denial of execution or authority to execute: verification.

denial of the same under oath.   If, however, under the rules of evidence, "genuineness and due execution" is not necessary to be proven before the instrument can be admitted in evidence, a denial under oath could not impose a condition of admissibility that did not before exist.   For example, if an action is brought upon a promissory note purporting to be signed by the defendant, a denial under oath of the genuineness and due execution would not take the place of section 1914, Compiled Laws, which provides: "When any party to a suit, either as principal or security, or indorser, founded on any written instrument, covenant, or agreement whatever, shall deny his signature, he shall do the same under oath."   The denial referred to in section 1922 would be merely inapplicable in that kind of a case, so far as genuineness and due execution are concerned.   Was it applicable, however, in the case at bar, for this purpose?   The note sued on purported to be the obligation of an artificial person, a corporation, executed by its officer, having requisite authority.   As such, plaintiff brought suit upon it.   He must be held to have averred the genuineness and due execution of that note, and, inasmuch as there is annexed to the declaration what purports to be a copy of the note itself, such genuineness and due execution could be taken as admitted, unless denied under oath.   This would be as much the case as if Richard Roe were sued upon a promissory note signed "Richard Roe, per John Jones, agent;" and neither case might be met by a denial of making signature.   We hold, therefore, that the second plea, being sworn to, constituted a denial under oath, contemplated by section 1922, and the court erred in sustaining the motion to strike the same out.   We do not hold that a plea was strictly necessary, but think that the statute would be satisfied by an affidavit denying genuineness and due execution, its office being merely to prevent an admission of genuineness and due

execution arising.   The denial may be "in a pleading or writing filed in the cause."   Any mode is sufficient, so that the denial is under oath.   Is this reversible error?

This inquiry involves at least two considerations. If the treasurer, who signed the note, is not such officer of a corporation as makes his signing a promissory note presumptively or prima facie the act of the corporation, then the burden of showing that he acted with authority is upon the plaintiff.   If a treasurer of a corporation is such an officer as is vested with implied power to make nogotiable paper in its name, then the burden is on the defendant to show the want of such authority in a particular case; and the denial under oath required by section 1922 merely leaves the parties to make out their case under the ordinary rules of evidence.   In Fifth Ward Savings Bank v. First National Bank, 7 Atl. Rep. 318, it is held that a treasurer of a savings bank had no authority or power virtute officii to borrow money for the savings bank and give its notes or pledge its security in payment.   It is also stated in Daniel on Negotiable Instruments, section 394, citing Torrey v. Dustin Monument Association, 5 Allen, 327, that the treasurer of a corporation is not such an officer as is vested with implied power to make negotiable paper in its name.   In Re Great Western Telegraph Company, 5 Biss. 363, it is stated that usage may authorize the treasurer of a corporation to bind it by a promissory note, plainly implying that otherwise he could not.   This, also, we understand to be the rule laid down by Morawetz, Private Corporations, section 251, and that such principle is well established.   In Craft v. S. B. Railroad Company, 150 Mass. 207, it is stated that, whatever may be true of trading corporations, there is nothing in the nature of the business of a horse railroad corporation, or of the

<div style="margin-left:2em; font-variant:small-caps; font-size:smaller">AUTHORITY of treasurer to execute negotiable paper in name of corporation.</div>

duties of a treasurer of such a corporation, which implies that the treasurer, by virtue of his office, has authority to borrow money for the company, or give its notes therefor. By reference to Monument Bank v. Globe Works, 101 Mass. 67, we find that by statute in Massachusetts the treasurer or manager of a trading corporation may bind the company to the payment of promissory notes made in pursuance of the business of the company. We hold, therefore, that, with the second plea in the case, it would have devolved upon the plaintiff in the court below to show authority in C. H. Dane, treasurer, to execute the note sued on, as a condition precedent to recovery. At the time the note was offered, objection was made to its admissibility upon the ground that under the sworn plea of the general issue its execution must be first proven. We do not think that "a sworn plea of general issue" is such denial as is required by section 1922, and that, as the case then stood, the objection was properly overruled. The objection would have stood good, however, if predicated upon the second plea, which we hold to have been improperly stricken out.

It is contended, however, that, inasmuch as the testimony put in by the defense showed authority in EVIDENCE, admis- the treasurer to execute the note sued sibility of. upon, the striking out of the second plea was without prejudice to defendant, and the judgment should be affirmed. We have examined the record carefully as to this, and the only thing we find upon the subject which may be supposed to touch the question occurs on pages 43 and 44 of the record, as follows: "Q. At the time the note was received in the bank, had you or not any knowledge in your official capacity as cashier, derived in the course of your official duties, with regard to Mr. Dane's authority to sign the name of the defendant to that note? A. Mr. Dane told me he was treasurer of the company, and he had an Oak

Grove & Sierra Verde Cattle Company account, and he was drawing checks from time to time against that account as treasurer. That is all I know about it. Q. You know nothing about this note or the authority? A. No, sir, I do not. I suppose he was treasurer of the company. Q. Did Mr. Dane, as treasurer, ever execute or discount in your bank, the First National Bank of Deming, a note of this kind, a note of the Oak Grove & Sierra Verde Cattle Company, previous to this?" This last question was ruled out as incompetent, irrelevant, and immaterial. It can scarcely be contended that the drawing of checks by the treasurer against money of a corporation establishes, or even tends to establish, a usage as to the giving of promissory notes of the corporation. It is no different to draw a check upon a bank where corporation funds are deposited, in payment of its bills, than for him to keep the money in the corporation's safe and pay it out on proper demand. Under the theory upon which the case was tried in the court below, this question was competent, material, and relevant. Such testimony would not have been competent against an innocent holder for value, who received the note of a corporation executed by an officer with prima facie authority, such as a cashier in indorsing the commercial paper of his bank. See West St. Louis Savings Bank v. Shawnee Bank, 95 U. S. 559. In the case at bar we think, however, that, even if the treasurer stood as an officer prima facie authorized to execute the note sued upon, the question ruled out would have been competent evidence as a circumstance taken with the others that were shown. Thus it was shown that Dane was president of the bank at the time that he executed the note of the cattle company; that without a dollar's cash passing from the bank to him as treasurer, or to the cattle company, he credited his individual account, and charged the cattle company account on the books of the bank;

and that, as president of the bank, he attended to the discounting of paper, and, notwithstanding there was a discount committee, Dane actually acted. Under these circumstances the jury should have had the benefit of proof that this note was the first attempted exercise of authority by the treasurer of the cattle company to discount its note.

As this case is to go back for a new trial because of the error in striking this second plea out, and in effect holding that Dane, as treasurer, had prima facie authority to execute the note sued upon, we will express our views upon other questions for the court's guidance upon a retrial. We think that the evidence in the case establishes that the bank was not a holder for value without notice, if, indeed, it was a holder for value at all. In First National Bank v. Blake, 60 Fed. Rep. 78, the plaintiff bank sued upon a promissory note, negotiable in form, due one year after date, and transferred for value before maturity. The defendant pleaded that the note was part of a contract relating to real estate, and the consideration of its giving was the promise of N. A. Cornish to protect certain real estate from incumbrance thereon, that he failed so to do, and defendant became entitled to a surrender of the note. It was further alleged that at the time of the transfer of the note Cornish was the president and general manager of plaintiff bank. A demurrer to the plea was overruled, the court saying: "Upon these facts, is the plaintiff a bona fide holder of the note sued on? It is claimed for the demurrer that the knowledge which Cornish had can not be imputed to the bank, because he acted for himself in the transaction; that his interest was opposed to that of the bank, and that, therefore, there is no presumption of a communication by him against his own interests, but that the presumption is the other way,—that he concealed the knowledge he had of the infirmity of his own title. A large number of cases are cited in support of

*Margin note:* BONA fide holder.

this view, and it is well settled that an officer or agent, dealing with a corporation or his principal on his own account, is not presumed to communicate knowledge which it would be his interest to conceal, and the corporation or principal is not chargeable with such knowledge. But there is no room for the application of this principle where the agent is the sole representative of both parties in the transaction." On that case the inference was merely drawn that Cornish was the sole representative of both parties, because it was stipulated that he was president and general manager, and as such was duly authorized to discount notes, and generally to act for plaintiff in such matters. In this case the proof shows that Dane alone attended to the discounting of notes, performing all the duties of the discount committee. In that case actual value was paid by the bank to the payee of the note. In this case it merely appears that there was a book entry. Numerous cases are cited in the opinion in First National Bank v. Blake, supra, some of which are found in the brief of plaintiff in error. We think the view enunciated in that case should apply to this. If it should be shown upon another trial that Dane was not the sole representative of both parties in this transaction, we think it will also be necessary to show that this treasurer acted with authority, either expressly granted or implied from usage or a long course of dealings; that the officers of the bank, other than Dane, had no knowledge of its being, if it was, a personal transaction of Dane's, and that the bank gave value for the note. Inasmuch as the receiver, under the rulings of the court, was not called on to make any such proof, and should be given such opportunity, we reverse the judgment of the court below, and remand the case for a new trial, with directions to reinstate the defendant's second plea; and this is accordingly done.

SMITH, C. J., approves the conclusion. LAUGHLIN, J., concurs.